UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

YVETTE CHAMPAGNIE, individually, :
and on behalf of the K.L.C., Inc. 401 (k) :
Profit Sharing Plan, :
     Plaintiff :
           :
     v. : CIVIL ACTION NO.
           : 3:06-cv-1819 (JCH)
ALAN H. KAUFMAN and LAURINDA :
LEE, EXECUTRIX of the ESTATE :
OF EDGAR W. LEE :
et. al., :
     Defendants. : June 1, 2007

**RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. No. 9]**

The plaintiff, Yvette Champagnie, brings this action individually and on behalf of

the K.L.C., Inc. ("KLC") 401K plan ("the Plan") against the defendants, Alan H. Kaufman

and Edgar W. Lee ("Lee"), who is represented by Laurinda Lee in her capacity as

Executrix of the Estate of Edgar W. Lee, pursuant to sections 502(a) (2) and 502(a) (3)

of the Employee Retirement Income Security Act of 1974 ("ERISA"). Champagnie

alleges that the defendants have committed various breaches of their fiduciary duties to

the Plan, which have resulted in great financial losses to both Champagnie and the

Plan. The jurisdiction of this court allegedly arises under 29 U.S.C. § 1132(e) (1) of

ERISA and 28 U.S.C. § 1331.

The defendants have moved to dismiss this action pursuant to Rule 12(b) (6) of

the Federal Rules of Civil Procedure. The defendants claim that Champagnie lacks

statutory standing since she is no longer a "participant" in the Plan, as that term is

understood in the ERISA context. Because the court finds that Champagnie does have

statutory standing to pursue her ERISA claim, the defendants' Motion to Dismiss (Doc.

No. 9) is denied.

## I.    STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, the court takes the allegations of the Complaint as true, and construes them in a manner favorable to the pleader. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  In this case, the court may also consider the 1997 Amended Plan document, the Amended Plan SPD, the Traditional Plan document, and the 1998 and 2004 personal plan statements that Richards has submitted.  The court may do so because these documents are integral to the complaint and Richards relies upon them in her complaint.  Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992).

A Rule 12(b)(6) motion to dismiss tests the adequacy of the complaint.  United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004).  Thus, such a motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A Rule 12(b)(6) motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation omitted).  "[W]hile bald assertions and conclusions of law will not suffice to state a claim, the district court, before granting a motion to dismiss, must accept as true all of

2

the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Tarshis v. Riese Org., 211 F.3d 30 (2d Cir. 2000) (internal citations omitted); see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

### A. Parties

Champagnie was an employee of KLC within the meaning of 29 U.S.C. § 1002 (6) at all relevant times. Kaufman and Lee were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A). At all times relevant to this action, KLC was an employer within the meaning of 29 U.S.C. § 1002(5) and a plan sponsor within the meaning of 29 U.S.C. § 1002(16) (B).

### B. Facts

KLC was a commercial equipment leasing company founded by Lee and Kaufman in 1977. Champagnie became a KLC employee in 1989. KLC's 401k Plan was established in 1996. The Plan consisted of three funds: (a) a profit sharing fund requiring contributions from KLC and its employees (the "401k Fund"); (b) a profit sharing fund originally established in 1987 under which contributions were made solely by KLC (the "Profit Sharing Fund"); and, (c) assets rolled over from a previous KLC defined benefit plan terminated by KLC around 1989 (the "Rollover Fund").

Kaufman and Lee separately accounted for, managed, and invested each of the three funds. The two were also the co-trustees of the Plan and its three funds, and they

were solely responsible for making investment decisions affecting the Rollover Fund and the Profit Sharing Fund. Investments of the 401k Fund assets were directed by the employees. Approximately one quarter of the participants in the 401k Plan and Profit sharing Plan had an interest in the Rollover Fund. Champagnie was a participant in all three funds.

In May 1998, Unicapital Corporation acquired KLC. Unicapital directed KLC, Kaufman, and Lee to roll the assets of the Plan into its 401k plan, but Kaufman and Lee transferred only the assets of the 401k Fund. In 1998, the Profit Sharing Fund had $1.7 million in assets, and the Rollover Funds had $529, 000 in assets. In 1999, which, according to the Complaint, was a year in which prudent investment managers yielded excellent investment returns, the Profit Sharing Fund yielded virtually no return. Champagnie alleges that the Profit Sharing Fund's lack of returns resulted from Kaufman and Lee's imprudent investment decisions.

Kaufman and Lee continued making imprudent and even reckless investment decisions in 2000, including the transfer of large portions of the Profit Sharing and Rollover Funds into investment funds denominated or described as "aggressive growth." By contrast, prudent managers, finding that investment yields were diminishing, decided to make more conservative investments. In Champagnie's view, Kaufman and Lee's decision to invest in aggressive growth funds was particularly imprudent given that the Plan needed to remain safe and liquid because it was being dissolved during the year 2000.

Sometime after the defendants invested Plan assets in aggressive growth funds, aggressive growth investments significantly declined in value, causing further financial

harm to the funds.  The dissolution of the Plan was completed during 2001, and the remainder of the Plan assets was distributed to the Plan participants.

## III.    DISCUSSION

Champagnie essentially claims that, by imprudently investing Plan assets as set forth above, the defendants breached their fiduciary duties to the Plan and Champagnie under section 404(B) of ERISA "by failing to make investment decisions with the care, skill, prudence, and diligence that would have been exercised by a prudent person familiar with investment decisions and acting under similar circumstances."  Compl. ¶ 14.  Champagnie also alleges that the defendants violated ERISA § 404(C) by failing to diversify the Plan's investments in order to minimize the risk of damaging losses.

The defendants argue that, when Champagnie accepted the lump sum payment paid out to Plan participants upon dissolution of the Plan, Champagnie lost her statutory standing to allege that the defendants breached their fiduciary duties by investing Plan assets imprudently.  In the defendants' view, by accepting this payment, Champagnie received all of the benefits that were due to her under the Plan.  According to the defendants, Champagnie therefore no longer has standing as a "participant" within the context of ERISA in the now defunct Plan.  The court disagrees.

For present purposes, Champagnie's standing to bring a claim under section 502(a) of ERISA, the civil enforcement provision, hinges on whether she may be considered a "participant" of the defunct Plan.  ERISA defines a "participant" as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be

eligible to receive any such benefit.

29 U.S.C. § 1002(7).  There is no dispute that, because the Plan no longer exists, Champagnie must ultimately establish that she "may become eligible to receive a benefit of any type from" the Plan.  Id.

Interpreting "participant" under section 1002(7), the Supreme Court has held that the term includes those employees who have "'a colorable claim' to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (quoting Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.) (per curiam), cert. denied, 479 U.S. 916 (1986)). For Champagnie to show that she has standing based on her eligibility to receive some form of Plan benefits, she must have a colorable claim that "she will prevail in a suit for benefits."  Id.  Absent such a showing, the court is precluded from determining that Champagnie fits within the intended meaning of "may become eligible."  See  Saladino v. I.L.G.W.U. Nat'l Ret. Fund, 754 F.2d 473, 476 (2d Cir. 1985).  To do otherwise "would create uncertainties as to statutory obligations and impose great costs on pension plans for no legislative purpose."  Id.

The answer to the question of whether Champagnie has standing as a Plan participant must reflect the nature of the Second Circuit's standing analysis under ERISA.  Drawing on First Circuit precedent, the Second Circuit has held that the basic standing question under ERISA is "whether the plaintiff is '*within the zone of interests ERISA was intended to protect*.'"  Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir. 1994) (quoting Vartanian v. Monsanto Co., 14 F.3d 697, 701 (1st Cir. 1994)).   The Mullins court determined that, "Congress intended the statutory scheme [in ERISA], in conjunction with state law, to afford broad protection" to plan participants.  Id. at 668.

Congress thus tailored ERISA to eliminate "jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants." Id. at 668 (citations omitted). Considering Congress' aims in enacting ERISA, the Mullins court reasoned that it would be unfair to prohibit the plaintiff, who had allegedly taken early retirement and terminated participation in his pension plan in reliance on misleading statements by plan administrators, from pursuing a claim for fraudulent misrepresentation under ERISA. Id. at 667-68. To conclude otherwise "would have the anomalous effect of allowing a fiduciary through its own malfeasance to defeat the employee's standing." Id. at 668 (quoting Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1221 (5th Cir.), cert denied, 506 U.S. 820 (1992)) (quotations omitted).

Unlike the plaintiff in Mullins, Champagnie does not allege that she was affirmatively misled by the defendants. Champagnie also does not allege that the defendants failed to notify her of significant changes in the Plan that negatively affected the benefits the due to participants. See, e.g., Richards v. Fleetboston Financial Corp., 235 F.R.D. 165, 176 (D.Conn. 2006). However, nothing in the language of Mullins or Richards suggests that only plaintiffs who allege such instances of gross misconduct fall within the ERISA zone of interests. In fact, this court determined in Richards that it would defeat the purposes of ERISA to deny standing where "the plaintiffs seek benefits to which they were entitled at or before the time of their termination, but which they did not receive because of the defendants' wrongdoing." Richards 235 F.R.D. at 176 (quoting Gray v. Briggs, 1998 WL 386177 at *4 (S.D.N.Y. 1998).

Champagnie does claim that she falls within ERISA's zone of interests because

her suit alleges that Kaufman and Lee breached their fiduciary duties through their imprudent investments on behalf of the Plan.  Compl. ¶¶ 14-15.  Based on the Complaint, Champagnie appears to fall within ERISA's zone of interests.  ERISA holds fiduciaries such as Kaufman and Lee to a "prudent man standard of care."  29 U.S.C. § 1104(a).  Accordingly, a fiduciary must fulfil their plan obligations in the sole interest of the participants and beneficiaries, and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a) (1) (B).  Fiduciaries must also discharge their duties "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly not prudent not to do so."  Id.

Liability for fiduciaries who breach their responsibilities, obligations, or duties to a plan is defined by 29 U.S.C. § 1109.  When a fiduciary breaches its duties to the plan, the offending fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ."  29 U.S.C. § 1109(a).

_____Hence, ERISA charges fiduciaries with a duty to act prudently with respect to a plan.  If the fiduciary breaches that duty, ERISA then holds that fiduciary accountable for the losses sustained by the plan.  In light of the fact that Champagnie plainly alleges that the defendants breached their duty to abide by the "prudent man standard of care," it would be an odd result if the breach of a fiduciary duty specifically defined by ERISA did not fall within the range of wrongdoing or malfeasance that concerned this court in

8

<u>Richards</u> and the Second Circuit in <u>Mullins</u>.

Regardless of how well the allegations in Champagnie's Complaint match the interests that ERISA seeks to protect, the court's analysis cannot stop at this level of generality. The Second Circuit also instructs that any interpretation of the seemingly expansive view of standing expressed by <u>Mullins</u> must be tempered by the Supreme Court's dictate that section 502 be narrowly construed "to allow only the stated categories of parties to sue for relief directly under ERISA." <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 101 (2d Cir. 2005) (citing <u>Franchise Tax Board v. Construction Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1 (1983)). To this end, the <u>Nechis</u> court reasoned that, "[p]articipants can lose standing to sue if, despite their having suffered an alleged ERISA violation, their participant status has been terminated before suit is filed." 421 F.3d at 101 (internal citations omitted).

Premising their argument on the above quoted language in <u>Nechis</u>, the defendants assert that Champagnie's participant status terminated when she accepted a lump sum payment upon dissolution of the Plan. In the defendant's view, because this lump sum represented all the benefits to which Champagnie was entitled, Champagnie's suit actually seeks damages, rather than benefits. Pl. Mem. at 8 (citing numerous cases). Under ERISA, plaintiffs are not permitted to recover extra-contractual damages. <u>See</u> <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134, 148 (1985) As the defendants assert, a claim for vested benefits seeks a fixed, ascertainable amount that is promised by plan documents, while a claim for damages seeks a speculative, imprecise amount to compensate for an alleged loss. <u>Id.</u> at 9 (citing <u>Yancy v. Am. Petrofina, Inc.</u>, 768 F.2d 707, 709 (5th Cir. 1985)). Therefore,

according to the defendants as well as host of district courts, Champagnie actually seeks damages because the money a plaintiff is owed as a result of imprudently invested plan assets is "amorphous and unascertainable." Pl. Mem. at 10 (citing, *inter alia*, Evans v. Akers, 466 F.Supp.2d 371 (D.Mass 2006); Howell v Motorola, Inc., 2006 WL 2355586 (N.D.Ill. Aug 11, 2006); Dickerson v. Feldman, 426 F.Supp.2d 130 (S.D.N.Y. 2006); Lalonde v. Textron, Inc., 418 F.Supp.2d 16 (D.R.I. 2006); Hargrave v. T.X.U. Corp., 392 F.Supp.2d 785 (N.D. Tex. 2005).

The court finds that the view advanced by the defendants is without merit. To begin, the court is puzzled by the defendants' consistent assertion that a claim for benefits lost due to imprudent fiduciary investment becomes a claim for damages once the plaintiff accepts a lump sum payment constituting the balance of her account with the relevant plan. To be sure, in a defined contribution plan like the one at issue here, "an individual's accrued benefits under such a plan are simply the balance of the individual's account." Coan v. Kaufman, 457 F.3d 250, 256 (2d Cir. 2006) (quoting 29 U.S.C. § 1002(23) (B)) (quotations omitted). Should a plaintiff refuse to accept the balance of her account, the defendants seem to concede that the plaintiff would have a claim for benefits. The difficulty with this position in a suit such as this is that, regardless of whether Champagnie accepted or refused the balance of her account, her underlying claim would still be for the money lost by the Plan as a result of the defendants' imprudent investments. The court sees no logical reason why such a claim seeks an ascertainable benefit when the plaintiff refuses a lump sum, but the very same claim seeks an unascertainable damage award once the plaintiff accepts a lump sum.

As the acceptance of a lump sum appears to be something of a red herring, the

10

defendants' argument on this point is tantamount to asserting that a claim for breach of ERISA's prudent man standard of care does not exist. Whether one labels the relief sought "benefits" or "damages," they are equally amorphous if one follows the defendants' contention to its necessary end. Because claims seeking relief for violations of ERISA's prudent man standard of care are undeniably within the zone of interests that ERISA safeguards, the defendants' claim cannot hold.

The distinction between benefits and damages made by the defendants suffers from another significant flaw. It assumes that benefits and damages should be defined by reference to how easily they can be calculated. However, the defendants do not provide a principled explanation for this assumption. Upon closer examination, the attempted classification ultimately fails.

The bulk of the cases cited by the defendants on the difference between damages and benefits rely upon the reasoning of the Fifth Circuit, as expressed in Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345 (5th Cir. 1989), to support their distinction between benefits and damages. See, e.g., Evans, 466 F.Supp.2d at 377 (discussing Sommers); Howell, 2006 WL 2355586 at *4 (same); Lalonde, 418 F.Supp.2d at 21 (same); Hargrove, 392 F.Supp.2d at 788-89 (same). The plaintiff in Sommers argued that trustees of a profit sharing trust breached their fiduciary duties when, during the liquidation of the trust, they sold trust shares for a price below the fair market value of shares. Sommers, 883 F.2d at 347. The participants, who had already received the proceeds of the sale in lump sum payments, sought to recover "the difference between the price representatives received for their shares and the fair market value of those shares at the time they were sold." Id. at 350.

11

In concluding that the plaintiffs asserted a claim for benefits, rather than damages, the Sommers court reasoned that "the representatives have a claim for an ascertainable amount allegedly owed them at the time they received their lump sum." Id.

To reach this outcome, the Sommers court conceded the overlapping nature of damages and benefits. Id. In the ERISA context, the blurred line between the two complicates the standing analysis because the terms "describe mutually exclusive categories." Id. Attempting to delineate an appropriate analysis, the court stated that a plaintiff who claims to have been forced into retirement, but has admitted receiving everything due to him under the relevant plan, seeks damages because he wishes to recover something beyond what the plan promised. Id. at 348-49 (analyzing Yancy, 768 F.2d 707 and Joseph v. New Orleans Electrical Pension & Retirement Plan, 754 F.2d 628 (5th Cir. 1985). By contrast, "a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits" because "payment of the sum sought by such a plaintiff will not increase payments due him" under the plan. Id. at 350.

The defendants misinterpret Sommers as asserting that whether the relief sought can be considered ascertainable turns on whether it can be easily calculated. For instance, they characterize the "fair market value" of a particular good as "fixed," while casting Champagnie's claims for "'substantial financial damages,' 'great financial loss,' and 'losses to the 401k Plan. . .'" as amorphous. Pl. Mem. at 10. An immediate weakness in the defendants' argument is their failure to identify exactly why the value of a plan managed by a prudent investor is inherently less determinable than the fair market value of a given item.

Fair market value can adequately be defined as "the price that an interested but

not desperate buyer would be willing to pay and an interested but not desperate seller would be willing to accept on the open market assuming a reasonable period of time for an agreement to arise." http://www.investorwords.com/1878/fair_market_value.html. Thus, the fair market value for any particular item is derived from economic assumptions of how reasonable actors behave in the free market. It certainly seems plausible that a plaintiff could develop a similar set of assumptions to describe the behavior of a prudent person making investments on behalf of a plan similar to the one at issue. Indeed, plaintiffs are often allowed to offer such proof so long as their conclusions are not overly speculative. See, e.g., Jones & Laughlin Steel Corp. v. Pfeifer, 426 U.S. 523, 547-51 (discussing acceptable methods of calculating lost stream of future earnings). In the end, this is simply another variation on the theme that Congress' adoption of ERISA's prudent man standard of care requires that the concept must have some meaning; yet, the defendants' interpretation of ERISA standing would rob the standard of any meaning.

The lesson to be drawn from cases such as Sommers is that, in order to establish standing under ERISA, a plaintiff must be able to identify the contractually defined benefits that she has yet to receive. If a plaintiff seeks something to which she is not entitled under the terms of the relevant plan, then her claim is for damages, not benefits. See Russell, 473 U.S. at 138 (rejecting Ninth Circuit holding that ERISA allowed for recovery of "all losses and injuries sustained as a direct and proximate cause of the breach of fiduciary duty, including damages for mental or emotional distress") (quotations omitted); see also Coan 457 F.3d at 256 (suggesting that employee who accepts lump sum payment from defined contribution plan and claims

that account balance would have been greater but for fiduciary breach is potentially a colorable claim for benefits); Nechis, 421 F.3d at 101 (holding that plaintiff seeking health care benefits after termination did not have colorable claim for vested benefits because welfare benefits do not vest).

The First Circuit's decision in Crawford v. Lamantia, 34 F.3d 28 (1st Cir. 1994) -- which the defendants cite for the proposition that a claim for damages stemming from an alleged breach of fiduciary duty where plaintiff has received lump sum payment of benefits is not a claim for vested benefits, Pl. Mem. at 8 -- strongly supports this view. In Crawford, the trustees of an employee stock ownership plan ("ESOP") negotiated a loan with a consulting firm, Arthur D. Little, Inc. ("ADL"), in order to acquire a set number of shares in ADL. Crawford, 34 F.3d at 30-31. The shares were then deposited into an ESOP suspense account and released to the individual accounts of ESOP participants. Id. at 30. After the plaintiff was terminated and received his vested distribution from the ESOP, he brought suit claiming that the trustees breached their fiduciary duties by overvaluing ADL stock and subsequently selling the stock at less than fair market value. Id. at 33. He claimed that, like the plaintiff in Corrigan, he was entitled to the difference between "the amount of money paid for New Shares of ADL stock and the true market value." Id. at 32. Distinguishing Corrigan, the Crawford court determined that this was not a case where the plaintiff could prove that he had not been paid the true value of his benefits. Id. The First Circuit elaborated:

> Defendants borrowed funds from ADL to acquire a set number of ADL New Shares . . . . Had defendants not overvalued the shares, they would not have borrowed as much money from ADL. Instead, a recalculation of the price of the stock would have resulted only in a smaller loan . . . and the same number of New Shares placed in the suspense account. It would *not* have resulted in a

14

similar loan being made to ESOP with any excess cash to be distributed to the
accounts of the participants.  The borrowed funds were not available for
distribution.

<u>Id.</u> at 33.  In other words, the First Circuit held that the plaintiff had "failed to show that

the defendants' alleged breach of fiduciary duty had a direct and inevitable effect on *his*

benefits."  <u>Id.</u>

The difference between the plaintiffs in <u>Crawford</u> and <u>Corrigan</u> is that the former

could not prove that they were entitled to greater benefits under the plan, while the

latter could.  This difference would hold true regardless of whether the plaintiff

proceeded under a theory of fair market value or a prudent man standard of care.  Thus

plaintiffs retain the ability to recover under a prudent man theory, so long as they can

point to the benefits still owed to them by the defendants.  In this case, Champagnie

has alleged that, because of the defendants' imprudent investments, she was denied

the full extent of her benefits.  The court finds that this is a colorable claim for vested

benefits.  Therefore, the defendants' Motion to Dismiss (Doc. No. 9) is denied.

**IV.     CONCLUSION**

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 9) is

DENIED.

**SO ORDERED.**

Dated this 1st day of June, 2007, at Bridgeport, Connecticut.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge